UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-61348-CIV-DIMITROULEAS/SNOW

SUSAN GOLDSTEIN,

    Plaintiff,

v.

MSC CRUISES, S.A.,

    Defendant.

_____/

## DECLARATION OF DR. FRANCISCO DE CASO BASALO

I, FRANCISCO J. DE CASO BASALO, declare and state as follows:

1. My name is Francisco J. De Caso Basalo. I am over twenty-one (21) years of age and otherwise competent to make this declaration. All facts stated in this declaration are based upon my personal knowledge.

2. I was retained to conduct a ship inspection aboard the MSC Divina by Aronfeld Trial Lawyers on behalf of the Plaintiff Susan Goldstein. On January 20th, 2019, I conducted the re-scheduled ship inspection on the MSC Divina in Miami, Florida.

3. On January 20, 2019, I arrived at the ship inspection, which was scheduled to commence at 10 a.m.

4. The inspection started soon after I boarded the vessel, which I boarded on or about 10 a.m.

5. As I was in the elevator going to inspection area on deck 12, I asked counsel for MSC, who was present at the time of the inspection, if it was possible to wet the area to" reproduce the conditions" (as they were at the time of the incident), but counsel for MSC replied that it was not possible.

6. I was made aware of this limitation for the first time on the day of the ship inspection.

7. Therefore, I was not able to proceed with any testing of the carpet in the area in a wet state. Such testing would have included the level of water on a wet carpet being transported; as well as the absorbent or non-absorbent properties of the carpet when wet.

8. Due to this limitation, I was not able to obtain all the necessary data to complete my examinations and form my expert opinions.

9. Furthermore, During the inspection of the soffit (false ceiling) clear evidence of corrosion was evident on the steel structural elements (inner flange) of the vessel by the surface pitting deposits (dark brown or red color material), photographic evidence was recorded. This occurs in steel elements when exposed to cycles of both oxygen and water. Therefore, water must have been present, most likely from a leak originating in the numerous service plumbing /conduits located in the soffit that supply water to the cabins (also seen during the inspection).

10. Moreover, an orange absorbent towel was located inside the bottom of the service cabinet. This tower was removed by the security personnel during the inspection, where he indicated it did not belong there, and should not be there. The towel is a residual sign on how a leak may have been managed. In any case, it is evidence that those in control of the vessel were aware of the presence of a water leaked, and that maintenance by designated personnel must have taken place.

11. Now that the water leak (or leaks) has been established, it is reasonable to assume that based on the effect of gravity, excess water will be deposited below, and based on the location of the corrosion, water would be deposited in the corridor of the deck, on the carpet. Depending on the level of water and saturation on the corridor carpet, that water can be potentially transported by passengers walking in the area. Thus, the conditions can be reproduced and be tested, as originally intended in the inspection.

FURTHER DECLARANT SAYETH NAUGHT

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 5th day of February, 2019 in Miami, Florida.

_____
FRANCISCO J. DE CASO BASALO