UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:18-cv-61348- CIV-DIMITROULEAS

SUSAN GOLDSTEIN

      Plaintiff,

v.

MSC CRUISES, S.A.,

      Defendant.

_____/

**DEFENDANT'S MOTION TO STRIKE**
**<u>EXPERT TESTIMONY OF FRANCISCO J. DE CASO BASALO</u>**

Defendant, MSC Cruises S.A, ("MSC"), pursuant to Federal Rule 702 and the applicable Federal Rules of Civil Procedure and Local Rules of the Southern District of Florida, hereby moves this Court for an Order striking Plaintiff's expert, Francisco J. De Caso Basalo, and/or excluding certain expert testimony from Francisco J. De Caso Basalo, and in support thereof states as follows:

## **INTRODUCTION**

This matter involves a cruise line passenger who alleges that on February 3, 2018, she suffered personal injury when she tripped and fell while walking in a cabin corridor aboard the cruise ship *MSC Divina.* Prior to the accident, Plaintiff exited her cabin. Immediately outside her cabin she observed buckets with water placed on the floor near her cabin door and assumes they were placed there to catch dripping water. (*See* Plaintiff's Deposition Transcript at pp. 211-12, ll. 16-9, attached as Composite Exhibit 3). The area where Plaintiff claims she fell is *not* the area where she claims she saw dripping water. (*See* Ex. 3 at p. 87, ll. 12-17; p. 88, ll. 9-21). Specifically, Plaintiff claims water was dripping into two buckets outside her cabin, but that she tripped and fell near elevators which are further down the corridor. (*See* Ex. 3 at p. 95, ll. 3-24). Plaintiff admits that she never noticed wet carpet at the area where she fell. (*See* Ex. 3 at p. 90, ll. 3-9; p. 95, ll. 21-24). She testified that her clothes did not get wet. (*See* Ex. 3 at p. 94, ll. 17-18). In fact, she testified that she presumes she must have tripped on something because she does not normally trip.

> *A.* *I mean, to the best of my ability I remember, I mean, I don't trip on my own feet. I mean, I'm pretty -- I've been walking my whole life, I don't just fall out of nothing. Something tripped me **and I'm thinking it was the carpet** that was buckling, maybe the water, something happened.*

> *Q.* *So you don't really know what caused you to fall?*

> *A.* **No***, except for the water, the buckets, and the rug was a little bit loose.*

(Ex 3. at p. 137, ll. 10-19) (emphasis added).

To get from Plaintiff's cabin to where she claims she fell, Plaintiff testified she needed to exit her cabin, turn left, walk down the corridor past other cabins before finally reaching the place where the hallway carpet transitions to the tile elevator lobby, where she claims she tripped and fell. (*See* Ex. 3 at p. 89, ll. 2-20). Between Plaintiff's cabin and the area where she fell, the hallway is divided by an airtight fire door that includes a metal threshold separating the carpet on the two sides of the door. (*See* Expert Report attached hereto as Exhibit 1, at Figure 2.)

Plaintiff retained Civil and Structural Engineer, Francisco De Caso Basalo, as her liability expert to provide opinions on the potential cause(s) of her fall. (*See* Ex. 1). He conducted a ship inspection aboard the *MSC Divina* on January 20, 2019. As will be shown in detail below, all of his opinions are premised on speculation that the carpet <u>at the location where Plaintiff fell</u> was flooded or otherwise saturated with water or had been flooded or saturated with water at some time before the accident. The opinions rendered by De Caso Basalo are based on inaccurate and irrelevant information, and grounded on unsupported speculation and conjecture. Accordingly, MSC submits that De Caso Basalo should be precluded from offering any speculative and unreliable expert testimony at the trial of this matter.

## MEMORANDUM OF LAW

### I.     The Admissibility of Expert Testimony

District courts serve as gatekeepers to the admission of scientific testimony by ensuring that "speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.'" *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11 Cir. 2005) (*quoting McCorvery v. Baxter Healthcare Corp.,* 298 F.3d 1253, 1256 (11th Cir. 2002)). In determining the admissibility of expert evidence, the court engages in a rigorous three-part inquiry pursuant to

*Daubert* and its progeny. Relevant expert testimony is admissible only if the trial court finds that: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rosenfeld v. Oceania Cruises Inc.*, 2009 U.S. Dist. LEXIS 86714 *2-3 (S.D. Fla. 2009) (quoting *United States v. Frazier*, 387 F.3d at 1260); *see also Daubert*, 509 U.S. at 589. The Eleventh Circuit has referred to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there may inevitably be overlap, the three prongs remain distinct concepts that must each be individually analyzed and satisfied before the testimony can be admissible. *Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Moreover, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). "Thus, the proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *Masferrer,* 367 F.Supp.2d at 1372 (interpreting *Allison*, 184 F.3d at 1306). One of the factors the Court must consider in deciding whether to admit proposed expert testimony is whether the testimony is "sufficiently tied to the facts of the case that it will aid the jury in resolving the factual dispute." *Daubert*, 509 U.S. at 591. Testimony should be rejected if a court concludes "there is simply too great an analytical gap between the data and the opinion offered." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997). *Daubert* does not allow an expert's opinion to be based upon guesswork or speculation. 509 U.S. at 599. Here, Plaintiff

has not established the proper foundation for the admission of certain expert opinion testimony of

De Caso Basalo, as Plaintiff relies on an expert who uses flawed methodology and reasoning to

reach his conclusions and whose opinions lack factual and evidentiary foundation. Furthermore,

Plaintiff has failed to demonstrate the reliability of her expert's opinions and the helpfulness of his

opinions to the jury by a preponderance of the evidence.

De Caso Basalo gives two conclusions as to the factors he thinks likely caused Plaintiff to

fall:

(1)     There is a high likelihood that the leak and resulting traction of water from
the leak on the deck contributed to expansion differential of the carpet,
resulting in defective wrinkles or buckles on the carpet surface creating a
tripping hazard that significantly increasing the risk contributing to a
tripping and falling incident.

(2)     There is a high likelihood that poor lighting conditions contributed to a
higher risk for tripping and falling.

(Ex. 1 at ¶6.).

## II.     De Caso Basalo's Opinions Regarding Wet or Wrinkled Carpet Should be Stricken

### A.     De Caso Basalo Fails to Satisfy the Methodology Requirements of *Daubert*

Pursuant to Rule 702, an expert witness may testify in the form of an opinion or otherwise,

if: (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

reliable principles and methods, and (3) the witness has applied the principles and methods reliably

to the facts of the case. Fed. R. Evid. 702. In considering the reliability of the method used by an

expert to reach his conclusions, the court must undertake an independent analysis of ***each step*** in

the logic that leads to the expert's conclusions. If the analysis is deemed unreliable at ***any step***, the

expert's entire opinion must be excluded**.** *Hendrix v. Evenflo Co., Inc.* 255 F.R.D**.** 568, 578 (N.D.

Fla. 2009) (*citing McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005)

(emphasis added); *see also McDowell v. Brown*, 392 F.3d 1283, 1301-2 (11th Cir.2004) ("an expert

5

opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions."); *Browder v. General Motors Corp.*, 5 F. Supp. 2d 1267 (M.D. Ala. 1998) (basing an "expert" opinion on facts not in evidence is not helpful to the trier of fact in understanding the evidence or determining a factual issue). An expert's testimony must be based on facts, which enable him to express a reasonably accurate conclusion (as opposed to conjecture or speculation). "Expert evidence based on a fictitious set of facts is just as unreliable as evidence based upon no research at all." *Guillory v. Domtar Indus., Inc.,* 95 F.3d 1320, 1331 (5th Cir. 1996). "[T]o be permissible the expert must be in possession of the necessary facts which will allow the expert to form an accurate conclusion." *D & D Assocs., Inc. v. Bd. of Educ. of N. Plainfield*, 411 F. Sup. 2d 483, 488 (D.N.J. 2006); *see also Stecyk v. Bell Helicopter Textron, Inc*., 295 F.3d 408, 414 (3d Cir. 2002) ("it is an abuse of discretion to admit expert testimony which is based on assumptions lacking any factual foundation in the record.").

Here, De Caso Basalo's conclusions are subjective, speculative, and unsupported by any facts in evidence, [1] rendering these opinions unreliable. In some instances, he fails to identify and/or utilize any sort of scientific methodology, which objectively explains how he reaches his conclusions. Moreover, certain of his opinions are rendered without considering the evidence in the case or by purposefully disregarding uncontroverted facts in the record.

---

[1]      In fact, De Caso Basalo reports even background information incorrectly. The maximum capacity of the Divina is 4,345, not 3,502, passengers as De Caso Basalo writes in ¶2.2 of his Expert Report. https://www.msccruisesusa.com/en-us/Discover-MSC/Cruise-Ships/MSC-Divina.aspx The gross tonnage is 139,072, not 139,400 as he claims. https://www.marinetraffic.com/ais/details/ships/373178000 She is 1,083 feet long, not 1004 as Dr. Basolo reports. https://www.msccruisesusa.com/en-us/Discover-MSC/Cruise-Ships/MSC-Divina.aspx While these facts are not relevant to the question of whether a leak caused water to be tracked to a carpet which became wrinkled causing Plaintiff to fall, the mistakes in De Caso Basalo's Expert Report point to a deeper problem: his fundamental lack of scientific rigor in gathering facts and applying scientific reasoning to draw valid, supported conclusions.

**1.      De Caso Basalo Fails To Establish That Any of the Conditions He Concludes Caused the Alleged Incident Predate the Alleged Incident**

In the introduction to his Report, De Caso Basalo explains that there are three criteria for establishing a cause and effect relationship. One of those, he writes, is temporal precedence, namely that "the cause has to occur before the effect." *See* Ex. 1 at ¶3. Ignoring the other problems with De Caso Basalo's methodology, he himself admits that he cannot conclude that any of the conditions he observed and relies upon for his opinions predate the alleged incident. He observed corrosion in the ceiling near Plaintiff's cabin and uses this to support his conclusion that there must have been a water leak near Plaintiff's cabin at the time of Plaintiff's fall and "the leak and resulting traction of water from the leak on the deck contributed to expansion differential of the carpet, resulting in defective wrinkles or buckles on the carpet surface creating a tripping hazard that significantly increasing [sic] the risk contributing to a tripping and falling incident." (Ex. 1 at ¶6.). In his Expert Report, he admits that the timeframe can only be narrowed to "at some point in the past prior the inspection" [sic]. (*See* Ex. 1 at ¶5.1.10.) In fact, he goes on to write that the corrosion he observed during his inspection on January 20, 2019, can form "within as little as a couple of days and as much as a couple of months." (*See* Ex. 1 at ¶5.1.11.) Since his inspection occurred nearly a full year after Plaintiff's accident, and since he admits this corrosion could have formed at any time prior to his inspection, there is no evidence the corrosion he observed inside the ceiling existed at the time Plaintiff allegedly fell nearly a year earlier. His inspection on January 20, 2019, therefore has no bearing on whether there was corrosion on or before Plaintiff's alleged incident, and certainly not on whether there was a leak on or before the alleged incident.

The sole basis for De Caso Basalo's purported opinion that there was a water leak *at the time of the alleged incident* is from Plaintiff's deposition testimony:

> *Q.      Other than reviewing the testimony of Ms. Goldstein, is there any other evidence that you saw in this case that would suggest there was a water leak in the corridor at the time of Ms. Goldstein's allege fall?*
>
> *A.      No*

(De Caso Basalo Deposition Transcript at pp. 64-65, ll. 21-1, attached as Composite Exhibit 2).

De Caso Basalo concedes there may not have been any water at the time of the alleged incident:

> *A.      ... There were other indirect signs that have been leaks at other times, but it's uncertain to know if those times were explicitly during the incident.*

(Ex. 2 at p. 66, ll. 13-16)

The expert provides no credible reason or substantiating evidence to show that the condition upon which his testing and analysis rests existed at or before the date of the incident. Without the criterion De Caso Basalo himself identified as necessary to establish a cause and effect relationship, De Caso Basalo cannot reasonably conclude that a leak caused the carpet to expand, which in turn caused a wrinkle in the carpet, which in turn caused Plaintiff to trip and fall. His conclusion and underlying speculative reasoning must therefore be stricken.

**2.      De Caso Basalo Never Tested Tracking Water on the Subject Carpet but Rather Bases His Conclusions on the Mere Assumption that Water Could Be Tracked**

Based on Section 5.1.7. of his report, De Caso Basalo is expected to testify that leaking water was somehow *tracked* from outside of Plaintiff's cabin all the way to the area where Plaintiff claims she fell. Plaintiff's theory goes that as the water was tracked over the carpet, the carpet became wet and saturated, and later, when the carpet dried, it wrinkled. According to De Caso Basalo, the wrinkled carpet is what caused Plaintiff to trip and fall. However, when pressed on this issue during his deposition, De Caso Basalo admitted he has no idea whether water could be tracked from the outside Plaintiff's cabin to the location where Plaintiff fell (some distance down the hallway and around several bends including passing through an airtight fire door).

> Q.    But isn't it true that you didn't test how much water could have been tracked?

> A.    Correct. Because that will depend on many variables.

(Ex. 2 at p. 78, ll. 6-10).

****

> Q.    But you didn't test how much water would be tracked by a said person or a number of persons walking through a carpet with a certain amount of water in it. Isn't that right?

> A.    Correct. Out of the scope of the test. The intent was, once again, to understand if [the carpet] did expand and if water could be tracked.

> Q.    Okay. So how do you get to high likelihood from a test that doesn't test how much water could be tracked?

> A.    Because of the fact that water could have been tracked, then you know that depending on how many people and we could assume certain variables to reach a level of water traction that would be sufficient to create a given expansion, percentage expansion of the carpet.

> Q.    Okay. So you're just creating a hypothetical in that it could be tracked, but you never test[ed] – none of your tests actually tested how much water would be tracked by any given number of people walking through the carpet with any given amount of water in it. Isn't that right?

> A.    Correct. The intent is to understand if water can be tracked, which, in fact, it can.

(Ex. 2 at pp. 84-85, ll. 4-4).

****

> Q.    So your tests have no way – if we assume the carpet was wet outside of Ms. Goldstein's cabin, you have no way to know and your tests don't show if a person walking through that wet spot would have carried any moisture to the area where [Ms. Goldstein] actually testified she fell.

> A.    It was wet, we can confirm that water could be tracked. What we cannot confirm is how much water would be tracked.

> Q.    Or how far the water would be tracked. Isn't that true?

> A.    Correct. That would depend on the person's weight, the air temperature of

> *the cabin, the type of shoes or footing that the individual has as they're tracking, the number of people walking by. Since the variables increase and those can't be reproduced, that was not evaluated.*

(Ex. 2 at p. 89, ll. 5-23).

<div align="center">****</div>

> Q.   *But you have no data – your tests have produced no data showing how much moisture would have been tracked from the area where plaintiff alleges there was water outside her cabin to the area where she alleges she fell; isn't that right?*
>
> A.   *Correct.*

(Ex. 2 at p. 91, ll. 10-17).

Having admitted to performing no tests regarding the tracking of water upon which he bases his causation chain – an alleged leak outside of Plaintiff's cabin caused water to be tracked to the area Plaintiff alleges she fell, causing the carpet in that area to become saturated and subsequently expand and dry, causing wrinkles to form – De Caso Basalo has no scientific basis for his speculation that water, which may never have existed, was tracked in sufficient quantities that would have allowed for any carpet expansion. Therefore, any portion of De Caso Basalo's Expert Report referencing tracking water must be stricken, as must any conclusions relying on the tracking of water as the means by which water was deposited onto the carpet in question.

**3.      De Caso Basalo Tested a Carpet Sample that Differed from the Ship's Carpet in a Critical Respect**

Since Plaintiff testified she tripped on something (rather than slipped), De Caso Basalo's opinion is that the carpet where Plaintiff fell must have been saturated with water at some point prior to the accident, must have expanded when saturated with water, and then must have shrunk back unevenly when it dried so as to cause a bump or wrinkle in the carpet that caused Plaintiff to fall. (*See* Ex. 1 at ¶4.3.7. and 4.3.8.) Plaintiff presumes she tripped on something uneven in the

floor surface, but she never observed anything wrong with the floor where she fell. (*See* Ex. 3 at p. 97, ll. 6-9). Plaintiff is not sure if the carpet was raised, ruffled, loose, or wrinkled in the area where she fell. (*See* Ex. 3 at pp. 216, ll. 6-19).

In order to conclude that the carpet wrinkled or buckled, De Caso Basalo tested a **loose carpet sample** by adding water to observe the effects on the carpet. *See* Ex. 1 at ¶6 and ¶4.3.4. Specifically, De Caso Basalo took a 15 inch by 23.74 inch sample of *Divina's* carpet and saturated that small piece with five pounds of water. (*See* Ex. 1 at ¶4.3.4 and Figure 14 on p 19.) Since water weighs 8.345 pounds per gallon, this means De Caso Basalo's test assumed approximately a half gallon of water had saturated every two square feet of carpet in the area where Plaintiff fell. When a loose sample of the carpet was saturated with this large volume of water, De Caso Basalo calculated that it expanded by an average of .178 inches (*See* Ex. 1 at ¶4.3.7.). De Caso Basalo never measured whether the loose sample carpet returned to its original size once it had fully dried. (*See* Ex. 2 at p. 93, ll. 18-22). Further, in his deposition, De Caso Basalo admits that his carpet experiment does not actually reflect the conditions that would have existed on the ship.

> Q.      *And that's because you completely saturated the carpet and then hung it up, you said, for 24 hours?*
>
> A.      *Correct.*
>
> Q.      *Which does not actually reflect any conditions that would have existed on the floor of the ship?*
>
> A.      *Right.*

(Ex. 2 at p. 86, ll. 13-20).

> Q.      *... your tests don't show if the carpet would have expanded or stretched at all – if it all, if it's glued to a metal deck?*
>
> A.      *Those tests were not conducted, correct, since the stretching contraction or expansion will vary based on the glue and surface that you have and the conditions that you put it on.*

(Ex. 2 at pp. 87-88, ll. 20-4).

In sum, De Caso Basalo's analysis regarding the expansion and shrinking of the carpet assumes (with no evidence whatsoever to support any of these assumptions (1) that the carpet at the spot where Plaintiff tripped had been saturated with a half gallon of water for every two square feet of carpet, (2) that this flooding occurred prior to Plaintiff's fall, (3) that the carpet was loose such that it was able to shrink and expand, and (4) that the soaking and drying of the carpet resulted in a wrinkle in the carpet which existed when Plaintiff fell.

The experiment was designed with the assumption that the evaluation would be "of exemplar carpet, equivalent to that found at the incident location." *See* Ex. 1 at ¶3.4.iii. He repeats this assumption numerous times, stating that the carpet sample "can be considered equivalent to that found at the incident location." *See* Ex. 1 at ¶4.3., ¶5.1.2., and ¶5.3.1. However, De Caso Basalo himself admits that the sample he tested was loose (i.e. not glued to a fixed surface) while he reports that the carpet onboard the cruise ship is glued to the deck *("hallway [where Plaintiff fell] had a _fixed_ carpet.")* (*See* Ex. 1 at ¶5.1.1) (emphasis added). Later, De Caso Basalo again points out that the carpet was "restraint" [sic]. (*See* Ex. 1 at ¶5.3.5.) MSC's corporate representative has confirmed that the carpet where Plaintiff fell was not loose carpet but rather was affixed with glue and carpet tacks to the steel deck of the ship. (*See* Ryan Allain's Deposition Transcript at p. 15, ll. 21-22, attached as Composite Exhibit 4). De Caso Basalo never addresses the fact that he did not test a similarly fixed carpet, nor does he opine that there would be no difference between a fixed and an unfixed carpet. To assume as much is unreasonable, and any testing of the unrestrained carpet is insufficient to allow De Caso Basalo to draw conclusions about the carpet that was glued to the deck. Therefore, any portion of Dr. Basalo's report concluding about the carpet and its alleged deformities must be stricken.

**4. De Caso Basalo Impermissibly Stacks Multiple Inferences To Support His Otherwise Unsupported Conclusions**

De Caso Basalo's report is rife with assumptions piled upon assumptions, some apparent and others hidden. For example, Dr. Basalo saturated a sample of the carpet and assumes that in doing so, he was *"reproducing a leak from the ceiling"* but given that there are no facts presented anywhere in the record that there was in fact ever a leak where Plaintiff fell, no facts regarding the nature of the alleged leak, and no facts regarding the timing, severity, or duration of any alleged leak, that assumption is entirely without foundation. (*See* Ex. 1 at ¶4.3.4.)

It is axiomatic that one cannot reproduce an event of which one knows no specific details, yet De Caso Basalo purports to do just that:

> *Q. You don't know who much water there was – that she is alleging there was outside of her cabin the day that she alleges she fell?*
>
> ...
>
> *A. My response was correct. I wasn't there at the time of the accident so I was not able to measure it.*

(Ex. 2 at p. 95, ll. 14-20).

On the basis of these assumptions, he then runs a test in which he saturates a small piece of loose carpet with more than a half gallon of water and then assumes that a similar quantity of water could have been tracked by unknown and untested means from the area where Plaintiff saw water drip into buckets near her cabin to the area of the alleged fall further down the hall. De Caso Basalo further assumes that such hypothetical water saturation of the carpet where Plaintiff fell would cause the carpet to wrinkle or bulge, notwithstanding that the carpet is glued down. As set forth in the testimony quoted herein, De Caso Basalo never tested to see how far water might be tracked by people walking down the hallway, whether any detectable amount of moisture could reach the area where Plaintiff fell (let alone more than half a gallon of water for every small piece

of carpet!), whether anyone else passed through that section of hallway, or how much (if any) water dripped outside of the buckets which Plaintiff testified were placed below the drip. De Caso Basalo does not know if any water leak was caused by a broken pipe, a leaky seal, or even minor condensation from air conditioning or humidity. He also never tested whether the carpet would bulge or wrinkle at all when glued to a solid steel surface.[2]

### 5.    De Caso Basalo Equivocates Between Three Areas on the Ship, Treating Them as Equivalent Though They Are Geographically Distinct

Plaintiff testified that she saw buckets on the floor outside her cabin and *assumes* water was dripping into the bucket immediately outside of her cabin door.[3] However, Plaintiff did not

---

[2]    In order to reach his conclusion, De Caso Basalo has stacked the following inferences – none of which have any evidentiary or scientific support: (1) that water dripped or leaked onto the carpet in the area outside of Plaintiff's cabin, (2) that this leak or drip occurred prior to Plaintiff's fall, (3) that the carpet under the drip or leak became sufficiently saturated that persons passing through the hallway would carry moisture on their shoe bottom and deposit the water in the spot where Plaintiff fell, (4) that a sufficient number of people walked through the area to saturate the carpet in the area where Plaintiff fell to a sufficient degree to cause the carpet to expand and contract as it had done when he soaked a piece of loose carpet in more than a half gallon of water, (5) that carpet which was glued firmly to a solid steel deck surface would contract and expand in the same manner as the loose piece of carpet De Caso Basalo tested, (6) that this water caused the carpet where Plaintiff fell to wrinkle, (7) that the wrinkle remained in place for a sufficient period of time that it existed on the date Plaintiff fell, and (8) that Plaintiff tripped on this wrinkle as opposed to simply catching her foot on some other item which might have been on the floor. (*See* Ex. 1 at ¶5.3.5.) Relying on eight separate assumptions (none of which are supported by direct evidence) to draw his ultimate conclusion is an impermissible stacking of inferences and should not be permitted by This Honorable Court.

[3]    MSC has no record of a leak in the area. (*See* Ex. 4 at p. 18, ll. 7-10; p. 19, ll. 11-15; p. 31, ll. 1-3; p. 47, ll. 12-14).The cabin steward (housekeeper) testified the buckets Plaintiff saw were used to clean passenger cabins. (*See* Maria Florgelin Rabuga's Deposition at p. 28, ll. 11-15, attached as Composite Exhibit 5). When pressed on the issue, Plaintiff admitted she never actually saw water dripping into the buckets, she just saw buckets with liquid on the floor and *assumed* they were placed there to catch dripping water because people do not put buckets on the floor for no reason. (Ex. 3, p. 211, ll. 16 – p. 212, ll. 9) ("*I didn't look up....I saw there was water in the buckets, but I wasn't looking where they were coming from, I didn't take notice.... Well, I don't think anybody just puts buckets there ….*").

fall at her cabin door. Instead, Plaintiff claims she fell near the elevators down the corridor, around two bends, and past an airtight fire door from her cabin. Simply put, the area where Plaintiff claims she fell is _not_ the area where she claims she saw dripping water, nor is it the area where Plaintiff's expert observed corrosion in the ceiling. (*See* Ex. 3 at p. 87, l. 12-17; p. 88, ll. 9-21; and Ex. 1 at ¶4.1.8. and Figure 8).

De Caso Basolo analyzes an alleged dripping in Location A, corrosion of unknown origin and unknown date in Location B, and Plaintiff's testimony that she tripped and fell in Location C and conflates these areas as though they are all the same. There is no basis to treat these three areas as the same, nor to assume that a condition in one location would also be present in the other two. This is bolstered further by De Caso Basolo's admission that he did not test the tracking of water, which is how he purports to connect the three remote areas. Moreover, De Caso Basalo does not provide measurements of the distances between the three locations in his Report, and implies that the distance is irrelevant or negligible. He lays no foundation for why he should treat these three distinct areas as the same nor for how water would cross the intervening airtight fire door.

### 6.      De Caso Basalo Uses Circular Reasoning To Bolster Unsupported Conclusions

De Caso Basalo consistently assumes what he sets out to prove. Since his test showed more than a half gallon of water was required to cause the small loose carpet sample to expand and contract, he assumes there must have been a substantial leak. Even if his opinions could support a finding that people might have tracked moisture on their shoe from area A or B to the spot where Plaintiff fell, he still lacks any foundation for concluding the carpet where Plaintiff fell somehow became saturated with more than a half gallon of water for every small piece of carpet such as to cause the carpet to bunch as he caused in his "test." De Caso Basalo claims that the purpose of the report is to "provide opinions on the plausible cause(s) of the subject incident…" but in his report,

he does not examine any potential causes other than the possibility of water being tracked from a leak in one area of the ship to the area where Plaintiff claims she fell. (*See* Ex. 1 at ¶1.1.) Though he cites "non-spuriousness: ruling out alternative explanations for the observed relationship between variables" as one of the three criteria for establishing a causal relationship, he fails to do so. (*See* Ex. 1 at ¶3.) He also never examines the possibility that intrinsic factors – such as abnormal gait or poor balance – could have caused Plaintiff to fall. He assumes the existence of a leak in order to conclude that a leak caused the fall, without giving any credible reason to exclude other possible causes.

7. **De Caso Basalo Makes Impermissible Legal Conclusions**

Throughout his Expert Report, De Caso Basalo sprinkles in clearly impermissible legal conclusions. For example, though there is no evidence MSC was aware of any problem with the carpet where Plaintiff fell (since no one else had ever fallen or reported a problem there), in ¶5.1.3 of his report, he writes *"Those in control of the maintenance of the vessel should have been aware of the resulting risk by the leak on the carpet, and had a duty of care to warn passengers about such hazardous conditions to reduce the risk of tripping and falling."* This statement combines a legal opinion for which De Caso Basalo has no expertise or foundation and an assessment of the duties of the ship's officers for which De Caso Basalo again has no expertise or foundation. In ¶5.3.7., he concludes about Defendant's reasonable knowledge: *"it is reasonable to assume that those in control of the vessel should have been aware of the resulting hazard."* In ¶5.2.4., he concludes about the duty of care and Defendant's actions: *"Those in control of the vessel should have been aware of the lighting conditions, and had a duty of care to warn passengers about such hazardous conditions, or ensure adequate lighting was provided as a preventative measure to reduce the risk of tripping and falling."* In ¶5.3.6., he concludes about the reasonableness of

Defendant's actions: *"Those in control of the maintenance of the vessel should have been aware and the necessary maintenance of the systems carrying water in deck 12 to avoid the leak and resulting hazard."*[4] All of these statements are conclusions about the ultimate legal questions in this case; questions that must be answered by This Honorable Court or by the trier of fact rather than by a civil engineer with no maritime engineering education or training. (*See* Ex. 2 at pp. 165-166, ll. 23-1).

Not only are legal conclusions outside of his area of expertise as a civil engineer, they are outside of the permitted testimony of any expert. The Eleventh Circuit has held that "[a]n expert witness may not testify as to his opinion regarding ultimate legal conclusions." *United States v. Long*, 300 Fed.Appx. 804, 814 (11th Cir. 2008). "[T]he standard is not that experts may testify and offer legal conclusions as long as such testimony would only amount to harmless error, the standard is that expert witnesses may not testify and offer legal conclusions *at all.*" *Convertino v. U.S. Dep't of Justice*, 772 F. Supp. 2d 10, 13 (D.D.C. 2010). For these reasons, De Caso Basalo's Expert Report must be stricken, or in the alternative, all of his legal conclusions must be precluded and stricken.

**III.     De Caso Baslo's Opinions Regarding Inadequate Lighting Should Be Stricken**

De Caso Basalo's second area of opinion is that "there is a high likelihood that poor lighting conditions contributed to a higher risk for tripping and falling." (Ex. 1 at ¶6). He bases this conclusion upon a light level measurements he took around (but not at) the spot where Plaintiff claims she fell, but fails to report which reading corresponds to which measuring location. (*See* Ex. 1 at Figure 9 and ¶4.2.2.). He concluded the lighting level was slightly below the Illuminating

---

[4]     It is not entirely clear what De Caso Basalo thinks those in control should have done exactly regarding maintenance, as he seems to have omitted a verb. Regardless, the uncontroverted evidence shows MSC had never received a report of any leak in this area.

Engineering Society of North America (IES) standard. (*See* Ex. 1 at ¶5.2.1.). However, De Caso Basalo has himself admitted this standard is not applicable to cruise ship construction. (*See* Ex. 2 at p. 166, ll. 2-13). Even if the standard did apply to cruise ships, De Caso Basalo notes that the (IES) recommendation is for 108 lux or higher, and he reports having measured light at 108 lux in the area around where Plaintiff claims to have fallen. (*See* Ex. 1 at ¶¶4.2.2. and 5.2.1.). He therefore has no basis for his conclusion that the lighting was "poor."[5]

Further, De Caso Basalo's lighting conclusion implies that the lighting presents a risk factor because it would be more difficult to discern the wrinkle he opines must have existed in the carpet. But all he has shown is that <u>if</u> there was a tripping hazard, that hazard might have been more difficult to see due to the corridor's lighting. *See* Ex. 1 at ¶5.2.3. Since his opinions about the carpet must clearly be stricken for the reasons stated above, his opinions about allegedly insufficient lighting to see the wrinkle must likewise be stricken. He has not opined that the lighting was low enough to constitute an independent hazard absent the carpet wrinkle he speculates must have existed and caused Plaintiff to trip. Having failed to prove that there was a tripping hazard, the lighting of the corridor is irrelevant and all portions of De Caso Basalo's report referencing the lighting must be stricken.

## IV.   De Caso Basalo's Opinions Should Be Excluded Under Federal Rule of Evidence 403, Because the Probative Value Is Substantially Outweighed by the Prejudicial Effect

Because of the powerful and potentially misleading effect of opinion testimony offered by someone with the title "expert witness," sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403. Exclusion under Rule 403

---

[5] Significantly, while Plaintiff's lawyer has alleged lighting may have contributed to the accident in his Amended Complaint, Plaintiff herself when asked what caused her to fall never mentioned anything about lighting or difficulty seeing. (*See* Ex. 3 at p. 137, ll. 10-19).

is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or if the expert testimony is cumulative or needlessly time consuming. Indeed, "the judge in weighing possible prejudice against probative force under Rule 403... exercises more control over experts than over lay witnesses." Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse. *Frazier,* 387 F.3d 1244, 1263 (11th Cir. 2004) (citations omitted).

De Caso Basalo's opinions as to the cause of Plaintiff's fall are particularly prejudicial and misleading in this case. As the court is aware from prior motions in this matter, there is substantial evidence that Plaintiff may have fabricated the story of a trip and fall causing her injury. (*See* DE 59, 64, 68, 81 and 87). Allowing expert opinion regarding Plaintiff's alleged cause of the accident (either wrinkled carpet or inadequate lighting) when there is substantial evidence of an alternative cause of the accident would unfairly add legitimacy and weight to the wet carpet or inadequate lighting explanation of her accident, as opposed to her original version of what caused her injury (heavy luggage and high heeled shoes). By taking Plaintiff at her word and using her testimony as the foundation for his analysis, De Caso Basalo implies that Plaintiff's claims are credible, which is confusing, misleading, and prejudicial.[6]

Further, because De Caso Basalo failed to utilize reliable scientific methodology to arrive at his opinions and because his opinions rely on multiple levels of stacked inferences and assumptions, his testimony has the potential to be extremely misleading. Moreover, he actively

---

[6] With regard to the claim of inadequate lighting, allowing an expert to discuss a lighting standard that does not apply to this vessel would add importance and legitimacy to this claimed cause when Plaintiff herself did not blame inadequate lighting for causing her fall. Likewise, allowing De Caso Basalo's opinions regarding possibly wet or wrinkled carpet should likewise be stricken as it is more prejudicial than probative.

attempts to mislead via careful wording and faulty logic. For example, in ¶5.1.1. of his Expert Report, De Caso Basalo states that "*each layer of a carpet and backing has a natural absorption rate.*" He implies that these rates vary between the different layers of the subject carpet, but he does not report any testing regarding differing layers and differing rates of absorption. Because he has not tested the different layers and their corresponding rate of absorption, it is unreasonable and unfounded to assume that the absorption rates vary between the layers. Saying that "fibers also have different water absorption properties" is misleading; fibers *can have* different water absorption properties. De Caso Basalo never showed that these fibers did in fact have different water absorption properties but invites the reader to make this unjustified assumption.[7]

Misleading testimony that has no basis in fact is more prejudicial than probative to the determination of the issues in this case. Because the risk posed by De Caso Basalo's opinions – which are essentially assumptions clothed as fact – substantially outweighs their probative value, it would be unfairly prejudicial to Defendant to admit his testimony into evidence.

## III.   Conclusion

Based on all of the above, De Caso Basalo should be stricken as a witness in this matter. Alternatively, all opinions and testimony regarding wet or wrinkled carpet, all opinions and testimony regarding improper or inadequate maintenance, all opinions and testimony regarding inadequate lighting, all opinions and testimony regarding what the ship should have known, and/or all opinions and testimony regarding legal duty should be stricken.

For the reasons set forth herein, MSC respectfully requests this Court Grant its Motion to

---

[7] Similarly, De Caso Basalo's references to land-based regulations in ¶5.1.4. and ¶5.1.5. of his Expert Report are inapplicable to the question of the proper construction and maintenance of walking surfaces onboard an international cruise ship, as Dr. Basalo himself admits in 5.1.5. None of these regulations have any legal application to cruise ships like the one at bar and by citing to them, De Caso Basalo attempts to mislead and create confusion.

Strike and/or exclude certain expert testimony from Plaintiff's expert, Francisco J. De Caso Basalo.

Dated: June 14, 2019
Miami, Florida

## Rule 7.1 Certification

Pursuant to S.D. Fla. L.R. 7.1(a)(3), counsel for Defendant certifies that an associate from Defendant's counsel conferred with opposing counsel on the issues raised in this Motion and Plaintiff's counsel opposes the relief sought herein.

Respectfully Submitted,
**MALTZMAN & PARTNERS, P.A.**

By:     /s/ *T. Alexander Devine*
        Jeffrey B. Maltzman, Esq.
        Florida Bar No. 48860
        *jeffreym@malzmanpartners.com*
        Steve Holman, Esq.
        Florida Bar No. 547840
        *stevem@maltzmanpartners.com*
        T. Alexander Devine, Esq.
        Florida Bar No. 10052
        *alexd@maltzmanpartners.com*
        55 Miracle Mile Suite 300
        Coral Gables, Florida 33134
        Tel: 305-779-5665
        Fax: 305-779-5664

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed with the Clerk of the Court via CM/ECF on this 8th day of July 2019. I also certify that the foregoing was served on all counsel or parties of record on the attached Service List either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Filing.

**SERVICE LIST**
**CASE NO.: 18-CV-61348**

| | |
|---|---|
| Spencer Aronfeld, Esq. | Jeffrey B. Maltzman, Esq. |
| Aronfeld@Aronfeld.com | jeffreym@maltzmanpartners.com |
| Mathias M. Hayashi, Esq. | Steve Holman, Esq. |
| MHayashi@Aronfeld.com | steveh@maltzmanpartners.com |
| ARONFELD TRIAL LAWYERS | T. Alexander Devine, Esq. |
| 3132 Ponce de Leon Boulevard | alexd@maltzmanpartners.com |
| Coral Gables, Florida 33134 | MALTZMAN & PARTNERS, P.A. |
| Phone: 305-441-0440 | 55 Miracle Mile, Suite 300 |
| Fax: 305-441-0198 | Coral Gables, FL 33134 |
| *Attorneys for Plaintiff* | Phone: 305-779-5665 |
| | Fax: 305-779-5664 |
| | *Attorneys for Defendant* |